# Exhibit 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

_____ x

DONALD KOTCHEROV,

                               Plaintiff(s),

       --against--

BOEHRINGER INGELHEIM PHARMATHEUTICALS, INC,
CHATTEM, INC., SANOFI-AVENTIS U.S. LLC, and
SANOFI U.S. SERVICES, INC.,

                            Defendant(s).

_____ x

*INDEX No.*
*Plaintiff(s) designate*
Kings
*County as the place of trial*
*The basis of the venue is*
Plaintiff's Place of Residence
601 Surf Avenue
**SUMMONS**

*County of*
Kings

***To The Above Named Defendant(s)***

     ***YOU ARE HEREBY SUMMONED*** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's Attorney(s) within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, Judgment will be taken against you by default for the relief demanded herein.

***Dated,*** November 12, 2021

***Defendant(s) address:***
BOEHRINGER INGELHEIM PHARMATHEUTICALS, INC: 900 Ridgebury Road, Ridgefield, CT 06877;
CHATTEM, INC.: 1715 West 38th Street, Chattanooga, Tennessee 37409;
 SANOFI-AVENTIS U.S. LLC.: 55 Corporate Drive, Bridgewater, New Jersey 08807;
SANOFI U.S. SERVICES, INC.: 55 Corporate Drive, Bridgewater, New Jersey 08807;

                              **EFROM J. GROSS, ESQ.**
                              **Attorney for plaintiff(s)**
                              ***Office and Post Office Address***
                              **713 Wildwood Road**
                              **West Hempstead, NY 11552**
                              **Tel.: (718) 787-0304**
                                    **(516) 508-1233**

Case 9:22-cv-80047-RLR Document 1-1 Entered on FLSD Docket 12/22/2021 Page 3 of 26

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

_____ x

DONALD KOTCHEROV,

                        Plaintiff(s),

                                          VERIFIED COMPLAINT
        -against-                         Index No.:

BOEHRINGER INGELHEIM PHARMATHEUTICALS, INC,
CHATTEM, INC., SANOFI-AVENTIS U.S. LLC, and
SANOFI U.S. SERVICES, INC.,

                        Defendant(s).
_____ x

        Plaintiff, DONALD KOTCHEROV, (hereinafter Plaintiff") by and through his

undersigned counsel, for their Complaint allege as follows based on personal knowledge,

investigation of counsel, and information and belief:

        1. At all times herein mentioned, personal injuries and economic damages suffered by

plaintiff, DONALD KOTCHEROV, was a direct and proximate result of the Defendants' negligent,

fraudulent, and wrongful conduct in connection with the design, development, manufacture, testing,

packaging, marketing, distribution, labeling, and/or sale of Zantac, the brand-name version of the

generic drug ranitidine.

        2. At all times herein mentioned, plaintiff, DONALD KOTCHEROV, was a resident of the

Kings County, City and State of New York.

        3. At all times herein mentioned, plaintiff, DONALD KOTCHEROV, began using Zantac on

or about February 2011 and until on or about November 2015.

        4. As a direct and proximate result of ingesting Zantac, Plaintiff, DONALD KOTCHEROV,

was diagnosed with testicular cancer on or around April 2015, as well as any and all of its sequelae

and attendant pain, suffering and emotional distress.

        5. As a result of foregoing, Plaintiff, DONALD KOTCHEROV, was caused to and still

suffers from the sequelae of testicular cancer.

Case 9:22-cv-80047-RLR Document 1-1 Entered on FLSD Docket 12/22/2021 Page 4 of 26

6. Had Plaintiff, DONALD KOTCHEROV, been informed that taking Zantac would expose him to unsafe quantities of NDMA such that it could and did cause him to contract testicular cancer, he never would have purchased or ingested Zantac.

7. Plaintiff, DONALD KOTCHEROV, required and incurred expenses in connection with medical treatment as a result of these injuries, which were caused by Defendants' ranitidine-based Zantac products, and their unlawful conduct with respect to Zantac's design, manufacture, marketing, distribution, and sale.

8. Plaintiff, DONALD KOTCHEROV, has endured pain, suffering and mental anguish as a result of his injuries, has suffered lost earnings and/or loss of earning capacity, and other injuries and damages to be proven at trial.

## DEFENDANTS

### BOEHRINGER INGELHEIM PHARMATHEUTICALS, INC,

9. Defendant, BOEHRINGER INGELHEIM PHARMATHEUTICALS, INC. (BOEHRINGER) is a Delaware corporation with a principal place of business at 900 Ridgebury Road, Ridgefield, Connecticut 06877, and is a subsidiary of the German Company BOEHRINGER INGELHEIM CORPORATION. BOEHRINGER owned the U.S.A. rights to over-the-counter Zantac from on or about December 2006 to January 2017, and manufactured and distributed the drug in the United States during that period.

10. At all times herein mentioned, Defendant, BOEHRINGER, was doing business in the State of New York.

### SANOFI-AVENTIS U.S., LLC

11. Defendant, SANOFI-AVENTIS U.S. LLC, is a Delaware limited liability corporation with a principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807, and is a wholly-owned subsidiary of the French company Sanofi.

12. At all times herein mentioned, Defendant, SANOFI-AVENTIS U.S. LLC, was doing business in the State of New York.

13. Defendant, SANOFI U.S. SERVICES, INC., is a Delaware limited liability corporation with a principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807, and is a wholly-owned subsidiary of the French company Sanofi.

14. At all times herein mentioned, Defendant, SANOFI U.S. SERVICES, INC., was doing business in the State of New York.

15. At all times herein mentioned, Defendant, CHATTEM, INC., is a Tennessee corporation with a principal place of business at 1715 West 38th Street, Chattanooga, Tennessee 37409, and is a wholly-owned subsidiary of the French company Sanofi.

16. At all times herein mentioned, Defendant, CHATTEM, INC., was doing business in the State of New York.

17. Defendants, SANOFI-AVENTIS U.S. LLC, SANOFI U.S. SERVICES, INC. and CHATTEM, INC., (collectively, "Sanofi" or "Sanofi Defendants) controlled the U.S.A. rights to over-the-counter Zantac from about January 2017 to the present and manufactured and distributed the drug in the United States during that period.

18. Defendants transact business within, is found in, and/or has agents in the State of New York.

19. All of plaintiff's claims arise in part from conduct defendants purposefully directed to plaintiff's State of New York. On information and belief, Defendants' Zantac was sold at hundreds of local and national pharmacies, including, but not limited to Wal-Mart, Target, CVS and Walgreen throughout the State of New York.

20. Plaintiff's claim arise out of Defendants' design, marketing and sale of Zantac in

Plaintiff's home State of New York.

21. Defendants regularly conduct or solicit business and derive substantial revenue from goods used or consumed in, inter alia, New York State.

22. Upon information and belief, at all relevant times, Defendants were present and doing business in New York State.

23. At all relevant times, Defendants expected or should have expected that its acts would have consequences within the State of New York.

24. At all relevant times, Defendants placed Zantac into the stream of interstate commerce.

## CAUSES OF ACTION

## COUNT I: STRICT PRODUCTS LIABILITY – DESIGN DEFECT

25. Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

26. Plaintiff brings this strict liability claim against Defendants for defective design.

27. Defendants manufactured, marketed, distributed, and sold Zantac during periods set forth above.

28. Defendants manufactured, designed, marketed, distributed, and sold Zantac with the expectation of reaching consumer, Plaintiff, DONALD KOTCHEROV, without any alterations or changes.

29. The Zantac manufactured, designed, marketed, distributed, and sold by Defendants was defective in design or formulation, because when it left the hands of Defendants, the foreseeable risk of the product exceeded the benefits associated with its design or formulation.

30. The Zantac manufactured, designed, marketed, distributed, and sold by Defendants was defective in design or formulation, because when it left the hands of the Defendants, it was more dangerous than an ordinary consumer would expect.

31. Zantac is unreasonably dangerous and unsafe for its intended purpose because, when ingested, it forms extremely high levels of NDMA and other harmful metabolites in the body. NDMA is a human carcinogen associated with various types of cancers. Indeed, the chemical structure of ranitidine itself is inherently unstable, and contains the two chemical precursors to the formation of NDMA: a nitrite group and a dimethylamine (DMA) group.

32. The foreseeable risks of Zantac include an increase in the occurrence of cancer from exposure to Zantac and NDMA.

33. The fact that harm such as that suffered by Plaintiff will occur from use of Zantac was completely foreseeable because Zantac ingestion causes high quantities of NDMA to form in the human body. Further, NDMA itself metabolizes into other harmful compounds including, but not limited to, formaldehyde, a known human carcinogen and known to cause leukemia.

34. The likelihood that cancer would result from the use of Zantac is very high, based upon the fact that Defendants knew that the likelihood and severity of the harm associated with Zantac usage was great. At least thousands of patients who took Zantac, including Plaintiff, experienced cancers proximately caused by Zantac use or have been exposed to an unreasonable risk of developing cancer. The likelihood and severity of the cancers suffered by Plaintiff and other users of Zantac far outweighed the Defendants' burden in taking safety measures to reduce or avoid the harm.

35. Zantac, as manufactured, designed, marketed, distributed, and sold by Defendants is much more dangerous than an ordinary consumer would expect in that it produced hazardous

amounts of NDMA and other harmful metabolites when ingested in the body.

36. At the time Defendants manufactured, designed, marketed, distributed, and sold Zantac to Plaintiff, safer, more practical, alternative designs were available to treat gastrointestinal conditions such as acid indigestion, heartburn, sour stomach, and gastroesophageal reflux disease, including but not limited to prescription drug alternatives such as Pepcid, Prilosec, Nexium, Prevacid, Protonix, AcipHex, and Dexilant, which pose much less risk of cancer with comparable or adequate efficacy. Indeed, these drugs, which are intended to treat the same condition as Zantac is intended to treat, don't metabolize into NDMA when ingested.

37. The Zantac manufactured, designed, marketed, distributed, and sold by Defendants was not unavoidably unsafe, as alternative formulations for these types of meds were available with comparable or adequate efficacy that did not pose the same cancer risk.

38. The risks of NDMA formation in the human body from Zantac ingestion, and the concomitant risk of cancers associated with NDMA, were actually known to and foreseeable to all Defendants at all times during the period which they manufactured and sold Zantac. Even before Zantac was commercially launched in 1983 in the United States, as further described above, the scientific community expressed concern about the propensity of ranitidine to form NDMA in the body when ingested. Further, from the time of Zantac's launch until the present day, various scientific literature, as further described in this complaint, expressed concerns about NDMA formation from ranitidine. Plaintiff was unaware of this scientific literature, but Defendants were aware of it.

39. The Defendants could have reduced or prevented the foreseeable risks of harm associated with Zantac by adopting a reasonable and feasible alternative design.

40. The likelihood and severity of the cancers suffered by patients like Plaintiff far

outweighed the Defendants' burden in taking safety measures to reduce or avoid the harm. Given the sheer number of people taking Zantac, including over the long-term, there was a high likelihood that Zantac would injure a very large number of patients, by causing cancer in such patients, which would be severely detrimental to one's health and could result in death.

41. The Defendants knew that ordinary patients would use Zantac without knowledge of the hazards involved in such use. Zantac failed to perform as an ordinary consumer would expect in that it produced hazardous amounts of NDMA and other harmful metabolites when ingested in the body.

42. The Defendants knowingly designed Zantac with the design defect that causes Zantac to form NDMA in the body when ingested, to maximize profits.

43. Zantac was approved by the FDA in 1983 pursuant to New Drug Application 0180703. Following the filing of NDA 0180703, there were numerous other NDAs filed by the Defendants, including, but not limited to, NDA Nos. 019090 (Glaxo Zantac injection), 019675 (Glaxo Zantac syrup), 020095 (Glaxo Zantac 150 capsule), 020251 (Glaxo Zantac effervescent 150), 021698 (Sanofi Zantac 150), 0200095 (Glaxo Zantac 300 tablet), 020520 (Sanofi Zantac 75 tablet), and 020745 (Sanofi Zantac 75 effervescent). In connection with each of these NDAs, the relevant Defendant which filed such NDA could have submitted an alternative or different formulation for Zantac, one in which Zantac wouldn't metabolize into NDMA and other harmful metabolites. But, no Defendant did so, instead, continuing to utilize the defective design of ranitidine, which caused the formation of NDMA and other harmful metabolites in the body upon ingestion.

44. The benefit in promoting enhanced accountability through strict products liability outweighs the benefit of a product that the Defendants should have and could have made safer years earlier.

45. Had Plaintiff known of the defect in Zantac, he would not have taken Zantac.

Instead, he would have taken a safer alternative to Zantac that wouldn't expose him to harmful levels of NDMA and other dangerous metabolites.

46. Plaintiff ingested Zantac for an approved purpose and experienced cancers as a result of his Zantac use.

47. Based on the foregoing, the Zantac manufactured, designed, marketed, distributed, and sold by Defendants was defective in design at the time it left Defendants' control.

48. As a direct and proximate result of the defective design of Zantac manufactured by Defendants and consumed by Plaintiff, Plaintiff suffered damages, including but not limited to personal injury, bodily harm, emotional distress, pain and suffering, permanent physical injuries, loss of enjoyment of life, economic and non-economic damages, and will continue to suffer such injuries, distress, pain and suffering, harm, damages, and economic loss in the future. Plaintiff suffered injuries and damages as described, in excess of the amount allowed by the Lower Courts.

## COUNT II: STRICT LIABILITY – FAILURE TO WARN

49. Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

50. Defendants are the manufacturers, designers, marketers, distributors, and sellers of Zantac.

51. It was reasonably foreseeable that Plaintiff would ingest Zantac.

52. The Zantac manufactured, designed, marketed, distributed and sold by Defendants was defective due to inadequate warning or instruction, because at the time it left the control of Defendants and was supplied to Plaintiff, Defendants knew or should have known that their product was unreasonably dangerous as confirmed by the extensive body of published literature and its own

internal data, because Zantac substantially and significantly increases the risk of cancer compared to other treatment options for gastrointestinal conditions such as acid indigestion, heartburn, sour stomach, and gastroesophageal reflux disease.

53. Despite the fact that Defendants knew or should have known about the increased risk of cancer with Zantac as compared to other treatment options for gastrointestinal conditions such as acid indigestion, heartburn, sour stomach, and gastroesophageal reflux disease, Defendants failed to exercise reasonable care to adequately warn of the increased cancer risk.

54. Indeed, at the time the Defendants manufactured and sold Zantac, the scientific community had already identified the dangers of NDMA formation in ranitidine. The risk that NDMA would form in the human body as a result of Zantac ingestion, and the associated development of Plaintiff's cancer, were known or knowable in light of the scientific and medical knowledge available at the time of manufacture and distribution of Zantac. At all times since Zantac was commercially sold in the U.S., the Defendants knew that ranitidine would form into NDMA in the body, and that NDMA was a carcinogen.

55. The Zantac manufactured and supplied by Defendants was defective due to inadequate warning or instruction, because at the time it left the control of Defendants and was supplied to Plaintiff-decedent, Defendants knew or should have known that their product was unreasonably dangerous, as confirmed by the extensive body of published literature and its own internal data, because Zantac substantially and significantly increases the risk of cancer.

56. Zantac posed a substantial danger to patients' bodies because NDMA forms in high quantities in the human body as a result of Zantac ingestion. Further, NDMA itself metabolizes into other harmful compounds including, but not limited to, formaldehyde, a known human carcinogen and known to cause leukemia.

57. Even though Defendants knew or should have known about the increased risk of cancer with Zantac use, Defendants failed to exercise reasonable care to adequately warn of the increased cancer risk with Zantac use. In fact, Defendants made no reference in the Zantac label to the formation of high quantities of NDMA when ingested in the human body, and that NDMA leads to cancers in animals and humans.

58. Ordinary consumers and physicians would not have recognized, and did not recognize, the risks Zantac posed to patients. The significantly increased risk of harm from cancer due to Zantac and NDMA is not an open and obvious danger or a matter of common knowledge.

59. The Defendants failed to adequately warn Plaintiff about the risks that Zantac posed to consumers.

60. The Zantac manufactured and supplied by Defendants was also defective due to inadequate post-marketing warning or instruction, because after Defendants knew or should have known of the substantially increased risks as described above, Defendants failed to provide adequate post-market or post-approval warnings to consumers and/or their healthcare providers and/or the FDA, which they have authority to do as the holder of the NDAs, and failed to revise the Zantac label to warn of the serious and substantially increased risk of cancer caused by Zantac as compared to other H2-receptor antagonists when taken as prescribed; nor did Defendants warn Plaintiff-decedent or his physician or the FDA that alternative safer options were available.

61. The Defendants never warned the FDA, those who took Zantac, or the scientific and medical communities, that NDMA forms in high quantities when ingested in the human body, and that NDMA leads to cancers in animals and humans.

62. Plaintiff was injured by using Zantac in a reasonably foreseeable way.

63. The lack of adequate warnings and instructions was a substantial factor in causing

Plaintiff's injuries.

64. Had Defendants adequately warned and instructed Plaintiff, he would not have taken Zantac, and would not have developed the cancer he has been afflicted with. Instead, Plaintiff would have taken an alternative drug to Zantac that would not have exposed him to harmful levels of NDMA and other dangerous metabolites.

65. Plaintiff's cancer-related injuries were directly and proximately caused by Defendants' inadequate warnings.

66. As a direct and proximate result of the defective design of Zantac manufactured by Defendants and consumed by Plaintiff, Plaintiff suffered damages, including but not limited to personal injury, bodily harm, emotional distress, pain and suffering, permanent physical injuries, loss of enjoyment of life, economic and non-economic damages, and will continue to suffer such injuries, distress, pain and suffering, harm, damages, and economic loss in the future. Plaintiff suffered injuries and damages as described, in excess of the amount allowed by the Lower Courts.

## COUNT III: NEGLIGENCE AND GROSS NEGLIGENCE

67. Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

68. Defendants had a duty to exercise ordinary and reasonable care in the design, manufacture, testing, sale, labeling, and/or distribution of Zantac it placed into the stream of commerce, including a duty to assure that the product did not cause foreseeable and unreasonable injury.

69. The Defendants have a duty to monitor the adverse effects associated with their pharmaceutical products, including Zantac.

70. The Defendants have a continuing duty to warn of the adverse effects associated with

their pharmaceutical products, including Zantac, to avoid reasonably foreseeable risks.

71. The Defendants owed these duties to Plaintiff because it was foreseeable to each Defendant that consumers like Plaintiff would ingest and consequently be endangered by Zantac.

72. The Defendants knew that Zantac was likely to form NDMA within the human body in high quantities due to the inherent instability of the ranitidine molecule, and as a result of such NDMA formation, Zantac users would be exposed to unreasonable risks of cancer. The Defendants' knowledge that NDMA would be formed within the human body as a result of Zantac usage, only grew with each year Zantac was on the market.

73. Defendants breached their duty of care to Plaintiff through its negligent acts and omissions. Defendants did not exercise reasonable care in the warning, design, manufacture, sale, testing, labeling, monitoring, and/or distribution into the stream of commerce of Zantac in that Defendants knew or should have known that Zantac could cause cancer when taken as directed.

74. The Defendants knew that the ranitidine molecule would likely break down into NDMA and other harmful metabolites in the body before Zantac was first approved by the FDA. Despite knowing that Zantac would cause these dangers in humans, the Defendants nonetheless proceeded with the design of the ranitidine molecule into Zantac.

75. Based, among other things, on their duty to monitor the adverse effects associated with Zantac, the Defendants knew that the likelihood and severity of the harm associated with Zantac usage was great. At least thousands of patients who took Zantac, including Plaintiff, experienced cancers proximately caused by Zantac use or have been exposed to an unreasonable risk of developing cancer. The likelihood and severity of the cancers suffered by Plaintiff and other users of Zantac far outweighed the Defendants' burden in taking safety measures to reduce or avoid the harm.

76. Defendants were negligent in the design, manufacture, sale, testing, and/or distribution of Zantac in that they: (a) failed to use due care in designing, formulating, developing, testing, manufacture, and sale of Zantac so as to avoid or warn against the described risks to consumers who used Zantac; (b) placed an unsafe product into the stream of commerce; and (c) failed to discover or warn of the dangers associated with the use of Zantac despite having actual and/or constructive knowledge of such dangers.

77. The Defendants knew or reasonably should have known that Zantac was dangerous or likely to be dangerous when used in a reasonably foreseeable manner.

78. Defendants knew or should have known that Plaintiffs could foreseeably suffer injuries as a result of Defendants' failure to exercise ordinary care as described above.

79. The Defendants failed to exercise ordinary care in the design, manufacture, and sale of Zantac.

80. The Defendants failed to use the amount of care in designing Zantac that a reasonably careful manufacturer would have used to avoid exposing patients to foreseeable risks of harm.

81. The Defendants failed to use the amount of care in warning about the risks and safe use of Zantac that a reasonably careful manufacturer would have used to avoid exposing patients to foreseeable risks of harm.

82. The Defendants knew or reasonably should have known that Plaintiff and Plaintiffs' physicians would not realize the danger posed by Zantac.

83. A reasonable manufacturer and seller under the same or similar circumstances would have instructed Plaintiffs and Plaintiff's physicians on the safe use of Zantac.

84. Defendants' failure to adequately warn Plaintiff and Plaintiff's doctors about the dangers of Zantac was compounded by the Defendants' omissions to doctors during sales and other

promotional activities.

85. Plaintiff was injured by using Zantac in a reasonably foreseeable way.

86. The lack of adequate warnings was a substantial factor in causing Plaintiff's injuries.

87. Had the Defendants adequately warned Plaintiff, Plaintiff would have read and heeded such warnings, and Plaintiff would not have ultimately ingested Zantac.

88. Plaintiffs were injured as a direct and proximate result of the Defendants' negligence.

89. The Defendants' conduct constitutes gross negligence and willful misconduct.

90. By designing Zantac such that it formed NDMA and other harmful metabolites in the human body following ingestion, when they knew that Zantac acted this way and knew about the harmful effects of NDMA, and by intentionally withholding a safer design of Zantac, while failing to warn (let alone adequately warn) of the known risks of Zantac, the Defendants acted in reckless disregard of, or with a lack of substantial concern for, the rights of others.

91. The Defendants intentionally designed Zantac in the way that they did and withheld the safer designs from patients while in disregard of the known risk of NDMA formation from Zantac usage, making it highly probable that harm would result.

92. The Defendants knew that their conduct would harm Plaintiffs, but chose to withhold any warning to Plaintiff, or to utilize a safer design for Zantac, simply to make more money for themselves.

93. Each of the foregoing acts or omissions by Defendants, when viewed objectively from its standpoint at the time, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiffs and others.

94. Defendants acted with conscious indifference to the right, safety, or welfare of Plaintiffs

and others. Their deceptive and inadequate labeling and marketing, misrepresentation of the risks of Zantac to doctors and the general public, and refusal to engage in proper safety evaluation and investigation both before and after Zantac was first sold, were undertaken in the callous pursuit of market advantage and without regard for the safety of those exposed to Zantac.

## COUNT IV: BREACH OF EXPRESS WARRANTY

95. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

96. Defendants were merchants and sellers with respect to Zantac.

97. In order to induce the purchase and/or use of Zantac, Defendants expressly warranted to potential users of Zantac that Zantac was safely tested and manufactured and was safe for the uses for which it was designed and/or advertised to be used. Express warranties were contained in direct to consumer advertising and other promotional and marketing campaigns, Zantac product information sheets given to patients with their prescriptions, the product labeling, and other public communications and representations.

98. Defendants breached said warranty in that Zantac was not safe to be used for the purposes for which it was manufactured and/or advertised.

99. Plaintiffs was injured as a result of detrimental reliance upon Defendants' express warranties.

## COUNT V: BREACH OF IMPLIED WARRANTY

100.    Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

101.    Defendants were manufacturers and merchant sellers with respect to Zantac.

102.    An implied warranty of fitness for human consumption runs from each Defendant to consumers like Plaintiff.

103.    In order to induce the purchase and/or use of Zantac, Defendants impliedly warranted to potential users of Zantac that Zantac was safely tested and manufactured and was safe for the uses for which it was designed and/or advertised to be used.

104.    Defendants breached this warranty in that Zantac was not safe for the uses for which it was manufactured and/or advertised.

105.    Plaintiff ingested Zantac for the treatment of acid indigestion, heartburn, sour stomach, and gastroesophageal reflux disease, which are the purposes for which the drugs were manufactured, sold, and prescribed.

106.    Plaintiff relied on the Defendants' skill or judgment to provide a product suitable for this purpose. The Defendants are in the business of designing, manufacturing, selling, and marketing prescription drugs and specialize in drugs for the treatment or prevention of acid indigestion, heartburn, sour stomach, and gastroesophageal reflux disease.

107.    The Defendants had reason to know that Plaintiff and/or his doctors would rely on the Defendants' skill or judgment.

108.    Zantac is unfit for the purpose for which it was purchased; it is toxic to patients when put to its intended and ordinary use, causing injuries to consumers.

109.    The dangers of Zantac to Plaintiff were known and knowable to the Defendants at the time of manufacture and sale. Yet the Defendants marketed Zantac without adequate warnings about the risks that Zantac would produce NDMA and other harmful metabolites in the body when ingested, something the Defendants knew or should have known.

Case 9:22-cv-80047-RLR Document 1-1 Entered on FLSD Docket 12/22/2021 Page 19 of 26

110. Plaintiff suffered cancer and/or injuries as a result of detrimental reliance upon Defendants' implied warranties and ingesting Zantac.

111. In addition to the common law, the conduct alleged herein constitutes a breach of the implied warranty of merchantability.

## COUNT VI: NEGLIGENT MISREPRESENTATION AND FRAUD

112. Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

113. Defendants manufactured, designed, marketed, labeled, distributed, and sold Zantac.

114. Defendants have a duty not to deceive consumers and their physicians, including Plaintiff-decedent, about Zantac.

115. Defendants had a duty to disclose to Plaintiff-decedent, his physicians, and the public that Zantac was not safe for use by Plaintiff due to its carcinogenic effect.

116. Defendants made representations to Plaintiff-decedent and his physicians regarding the character and/or quality of Zantac for guidance in their decision to select Zantac for Plaintiff's use.

117. Specifically, Defendants represented that Zantac was just as safe as or even safer than other drugs for treatment of gastrointestinal conditions such as acid indigestion, heartburn, sour stomach, and gastroesophageal reflux disease available on the market.

118. Defendants knew, or should have known, that such statements were false.

119. Defendants negligently and/or recklessly misrepresented to Plaintiff, Plaintiff's physicians, and the healthcare industry the safety and effectiveness of Zantac and/or recklessly

and/or negligently concealed material information, including adverse information, regarding the safety, effectiveness, and dangers posed by Zantac.

120. Defendants made reckless or negligent misrepresentations and negligently and/or recklessly concealed adverse information when Defendants knew, or should have known, that Zantac had defects, dangers, and characteristics that were other than what Defendants had represented to Plaintiff, Plaintiff's physicians and the healthcare industry generally. Specifically, Defendants negligently or recklessly concealed from Plaintiff, Plaintiff's physicians, the health care industry, and the consuming public:

a. the defective, improper, negligent, fraudulent, and dangerous design of Zantac;

b. that ranitidine had not been adequately tested prior to product launch;

c. the connection between ranitidine and Zantac and NDMA formation;

d. that ranitidine and Zantac can produce NDMA at harmful levels;

e. that harmful levels of NDMA is carcinogenic;

f. the inadequacy of the labeling for Zantac; and

g. the dangerous carcinogenic effects of Zantac.

121. Defendants negligently and/or intentionally misrepresented this information in Zantac's labeling, promotions and advertisements, in order to avoid losses and sustain profits in their sales to consumers and instead labeled, promoted, and advertised their product as just as safe and effective as other H2 blockers.

122. In supplying this false information, Defendants failed to exercise reasonable care or competence in obtaining safety information concerning Zantac and in communicating this information to the intended recipients, including Plaintiff-decedent and his physicians. Further,

Defendants were aware that without such safety information, it could not accurately make the above described representations. Defendants knew about Zantac's relative risks and the true extent of its risks but chose to include false and misleading representations regarding those risks in its labeling, with the intent that Plaintiff and his doctors rely on them. Plaintiff did reasonably rely on those false and misleading representations in taking Zantac, which proximately caused harm to Plaintiff.

123.    Defendants should have known through the exercise of due care that these representations were false, and they made the representations without the exercise of due care leading to the deception of Plaintiff, Plaintiff's physicians, and the healthcare industry.

124.    At all times herein mentioned, neither Plaintiff nor Plaintiff's physicians were aware of the falsity or incompleteness of the statements being made by Defendants and believed them to be true. Had they been aware of said facts, Plaintiff would not have taken Zantac.

125.    Plaintiff justifiably relied on and/or was induced by Defendants' negligent or reckless misrepresentations and/or negligent or reckless failure to disclose the dangers of Zantac and relied on the absence of information regarding the dangers of Zantac which Defendants negligently or recklessly suppressed, concealed, or failed to disclose to Plaintiff's detriment.

126.    Defendants had a post-sale duty to warn Plaintiff, Plaintiff's physicians, and the general public about the potential risks and complications associated with Zantac due to its carcinogenic effect in a timely manner.

127.    Defendants made the representations and actively concealed information about the defects and dangers of Zantac with the absence of due care such that Plaintiff's physicians and the consuming public would rely on such information, or the absence of information, in selecting Zantac as a treatment.

128.    Plaintiff reasonably relied to his detriment upon Defendants' representations that

Zantac was just as safe and effective as other methods of treating and preventing gastrointestinal conditions such as acid indigestion, heartburn, sour stomach, and gastroesophageal reflux disease.

129.    Plaintiff-decedent reasonably relied to his detriment upon Defendants' representations that Defendants' labeling, advertisements and promotions fully and accurately described all known risks of the product.

130.    Had Plaintiff-decedent or his physician known of Defendants' concealment of the true facts – that Zantac was more dangerous than other H2 blockers, Plaintiff-decedent would not have ingested Zantac.

131.    As a direct and proximate result of the foregoing concealments and omissions, Plaintiff suffered serious injuries, including cancer.

132.    As a direct and proximate result of the foregoing concealments and omissions, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

133.    Plaintiff may also require additional medical and/or hospital care, attention, and services in the future.

**COUNT VII: PUNITIVE DAMAGES**

134.    Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

135.    Defendants' conduct as alleged in this Complaint shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights, so as to warrant the imposition of punitive damages.

136.    As a direct and proximate result of Defendants' malicious, fraudulent, and/or intentional disregard of Plaintiffs' rights, Plaintiff is entitled to punitive damages to punish

Defendants and deter similar wrongdoing by others in the future.

WHEREFORE, plaintiff, DONALD KOTCHEROV, demands judgment against all defendants on the First Cause of Action in an amount sought that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this action together with the costs and disbursements of this action; plaintiff, DONALD KOTCHEROV, demands judgment against all defendants on the Second Cause of Action in an amount sought that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this action together with the costs and disbursements of this action; the plaintiff, DONALD KOTCHEROV, demands judgment against all defendants on the Third Cause of Action in an amount sought that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this action together with the costs and disbursements of this action; plaintiff, DONALD KOTCHEROV, demands judgment against all defendants on the Fourth Cause of Action in an amount sought that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this action together with the costs and disbursements of this action; plaintiff, DONALDKOTCHEROV, demands judgment against all defendants on the Fifth Cause of Action in an amount sought that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this action together with the costs and disbursements of this action; plaintiff, DONALD KOTCHEROV, demands judgment against all defendants on the Sixth Cause of Action in an amount sought that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this action together with the costs and disbursements of this action; plaintiff, DONALD KOTCHEROV, demands judgment against all defendants on the Seventh Cause of Action in an amount sought that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this action together with the costs and disbursements of this action;

INDEX NO. 529463/2021
RECEIVED NYSCEF: 11/17/2021

Case 9:22-cv-80047-RLR   Document 1-1   Entered on FLSD Docket 12/22/2021   Page 24 of 26

Dated: West Hempstead, New York
November 12, 2021

Yours, etc.,

**EFROM J. GROSS, ESQ.**
**713 Wildwood Road**
**West Hempstead, NY 11552**
**Tel.: (516) 483-4580**
**        (718) 787-0304**

Case 9:22-cv-80047-RLR   Document 1-1   Entered on FLSD Docket 12/22/2021   Page 25 of 26

## ATTORNEY'S AFFIRMATION

EFROM J. GROSS being duly sworn, deposes and says:

That deponent is an attorney and affirms the following to be true under the penalties provided by Law. I am the attorney for plaintiff(s); and have read the foregoing COMPLAINT and know the contents thereof; that the same is true to my knowledge, except as to those matters therein stated to be alleged on information and belief, and as to those matters I believe to be true; that the reason that this verification is made by Affirmant instead of plaintiff(s), as plaintiff(s) is not within the County where your Affirmant prepared this document.

Affirmant further says that the grounds of his belief as to all matters in the said COMPLAINT are based upon deponent's general investigation of the facts herein.

Dated: West Hempstead, New York
November 12, 2021

_____
EFROM J. GROSS, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

DONALD KOTCHEROV,

Plaintiff(s),

-against-

BOEHRINGER INGELHEIM PHARMATHEUTICALS, INC,
CHATTEM, INC., SANOFI-AVENTIS U.S. LLC, and
SANOFI U.S. SERVICES, INC.,

Defendant(s).

## SUMMONS AND VERIFIED COMPLAINT

*EFROM J. GROSS, ESQ.*
*Attorney for Plaintiff(s)*
*Office and Post Office Address, Telephone*
*703 Avenue U*
*Brooklyn, New York 11223*
*Tel.: (718) 787-0304*

TO:

Attorney(s) for

Service of a copy of the within                                    is hereby admitted.

Dated,                                                       -----------------------------------
                                                             Attorney(s) for

PLEASE TAKE NOTICE

PLEASE TAKE NOTICE
☐            that the within is a (certified) true copy of an                    entered in the office of the Clerk
Notice of    of the within named Court on
Entry
☐            that an Order of which the within is a true copy will be presented for settlement to the
Notice of    Hon.        One of the judges of the within named Court, at
Settlement   Brooklyn, New York on        20        , at        M.

Dated: West Hempstead, New York                    Yours, etc.
                                                   *EFROM J. GROSS, ESQ.*
                                                   *Attorney for Plaintiff(s)*
                                                   Office and Post Office Address
                                                   *703 Avenue U713*
                                                   *Brooklyn, New York 11223*